**Gabrielle DOUYON, Plaintiff,**

v.

**NY MEDICAL HEALTH CARE, P.C., Seymour Schneider, a/k/a SY Schneider, Koroush Golyan, a/k/a David Golyan, Nathan Khaimov, and Faraidoon Daniel Golyan, M.D., Defendants.**

No. CV 10–3983 (AKT).

United States District Court, E.D. New York.

Signed Sept. 30, 2014.

Peter Thomas Lane, Schlanger & Schlanger LLP, New York, NY, Daniel

Adam Schlanger, Schlanger & Schlanger, LLP, Pleasantville, NY, for Plaintiff.

Andrew Citron, Andrew Citron, Esq., New York, NY, Revaz Chachanashvili, Revaz Chachanashvili & Associates, Forest Hills, NY, for Defendants.

### MEMORANDUM AND ORDER

A. KATHLEEN TOMLINSON, United States Magistrate Judge:

#### I. PRELIMINARY STATEMENT

Plaintiff Gabrielle Douyon ("Plaintiff") commenced this action against Defendants N.Y. Medical Health Care, P.C., Seymour Schneider, Koroush Golyan, Nathan Khaimov, and Faraidoon Daniel Golyan for violation of the Fair Debt Collection Practices Act ("FDCPA") and various New York State laws. Following the close of discovery and summary judgment motion practice, Plaintiff settled her claims against all Defendants except Seymour Schneider, pursuant to a stipulation of discontinuance that was "so ordered" by the Court on April 17, 2013. *See* DE 97. Plaintiff later settled all her remaining claims against Defendant Schneider pursuant to a separate stipulation endorsed by the Court on October 31, 2013. *See* DE 103. In the latter stipulation, Plaintiff reserved "the right to seek recovery for all reasonable costs and attorneys' fees in this action, with the Court retaining jurisdiction to determine the same." *Id.* ¶ 3. The parties further agreed to a briefing schedule to address the issue of fees and costs to be awarded to Plaintiff's counsel in this matter. *Id.* ¶ 5.

Before the Court is Plaintiff's motion for attorneys' fees and costs solely against Defendant Seymour Schneider. Defendant Schneider opposes the motion, contending that Plaintiff's counsel achieved limited success and objecting to certain aspects of the billing records. Based upon the Court's review of the applicable case law and the arguments advanced by both parties, Plaintiff's motion is hereby GRANTED, in part, and DENIED, in part, to the extent set forth in this Order.

#### II. BACKGROUND

##### A. Relevant Procedural History

On August 31, 2010, Plaintiff commenced this action against N.Y. Medical Health Care, P.C., Sy Schneider, David Golyan, Nathan "DOE," and Faraidoon Golyan, M.D. *See* DE 1. In her original Complaint, Plaintiff alleged violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, New York usury laws, N.Y. General Obligations Law § 5–501, *et seq.*, and common law claims for intentional infliction of emotional distress, slander, negligence, and negligent hiring and retention based on the "unfair abuse and deceptive practices employed by Defendants in their attempt to collect an alleged medical debt from Plaintiff." *Id* ¶¶ 1–2.

On January 4, 2011, Defendants filed their Answer and Counterclaims to "sustain[ ] the debt" which was purportedly owed by Plaintiff. DE 10. In response, Plaintiff moved to strike Defendants' Answer and Counterclaim and for a more definite statement of Defendants' Counterclaim. DE 13. Judge Feuerstein referred the motion to this Court for a Report and Recommendation. *See* Feb. 24, 2011 Electronic Order.

While Plaintiff's motion remained *sub judice*, the parties appeared for an Initial Conference before this Court on April 15, 2011. DE 20. The Court brought to the attention of Defendants' counsel at that time that the Answer and Counterclaims filed by Defendants failed to meet the pleading requirements of the Federal Rules of Civil Procedure and Local Civil

Rules of the Eastern District. *Id.* ¶ 3. The Court noted further that:

> Most egregiously, the pleading was not signed, in violation of Rule 11. It appears that very little communication has occurred between Defendants' counsel and Plaintiff's counsel regarding these deficiencies, and that it took motion practice by Plaintiff's counsel to bring Defendants' counsel to the point of action. Defendant has opposed the motion to strike, but has repeatedly stated that it will amend its pleadings. A review of the pleadings begs the question how much work Defendants' counsel has done in federal court given the complete disregard of the rules for pleading. I advised Defendants' counsel that I would be recommending to Judge Feuerstein that the motion to strike be granted, but that Defendant also be permitted to amend its answer and counterclaim. Defendant is directed to file the amended answer and counterclaim within fifteen (15) days of today's conference. A separate Report and Recommendation will be issued in the short term. This also means that Plaintiff's counsel will be required to respond to a second pleading.

On this basis and because of the manner in which Defendant's pleading was filed and the noncompliance with Rule 11, I am also recommending that Defendant be required to reimburse plaintiff for the reasonable costs and attorney's fees incurred for the time it takes Plaintiff's counsel to reply to an appropriately filed counterclaim.

*Id.* ¶ 3. Following the conference, Defendants served a First Amended Answer with Counterclaims against Plaintiff for breach of contract and unjust enrichment. *See* DE 21.

On May 4, 2011, this Court recommended to Judge Feuerstein that Plaintiff's motion to strike be granted and that Defendants be permitted to amend their Answer and Counterclaims in compliance with the Federal Rules of Civil Procedure. *See* DE 23. Further, the Court recommended that "because Plaintiff will now have to respond to a second pleading, I respectfully recommend to Judge Feuerstein that Plaintiff be awarded the reasonable costs and attorney's fees associated with responding to Defendants' amended counterclaim." *Id.* at 23. Pursuant to a stipulation entered into by the parties on May 13, 2011, Defendants consented to withdraw their First Amended Answer with Counterclaims and to extend Defendants' time to file an Amended Answer with Counterclaims in accordance with the Report and Recommendation. DE 26. The Court "so ordered" the stipulation on May 16, 2011 and directed Defendants to file their First Amended Answer with Counterclaims within fourteen days. *See* May 16, 2011 Electronic Order.

Having received no objections to this Court's May 4, 2011 Report and Recommendation, Judge Feuerstein entered an Order adopting the Report in its entirety on May 27, 2011. *See* DE 27.[1] Defen-

1. Pursuant to Judge Feuerstein's May 27, 2011 Order adopting this Court's report and recommendation granting Plaintiff leave to recover fees and costs associated with responding to Defendants' amended counterclaim, Plaintiff served a motion to that effect on the Defendants on July 8, 2011 and filed a letter addressed to Judge Feuerstein confirming the same. DE 33. Defendants never opposed the motion. On December 30, 2013, while also briefing the instant motion for attorneys' fees, Plaintiff's counsel filed a renewed motion to recover Plaintiff's attorneys' fees and costs associated with responding to the amended counterclaim. *See* DE 105. Plaintiff requests that the motion be granted by virtue of Defendants' default. *Id.*

dants filed their Second Amended Answer and Counterclaims on the same date. *See* DE 28. Plaintiff moved to dismiss Defendants' amended counterclaims pursuant to Rule 12(b)(1) and (b)(6). *See* DE 44. The motion, however, was terminated as moot in light of the acceptance of a Rule 68 Offer of Judgment in the favor of N.Y. Medical Health Care, P.C. against Plaintiff in the amount of $5,378. *See* DE 66; *see also* Nov. 29, 2011 Electronic Order.

By Notice of Motion dated August 26, 2011, Plaintiff sought leave to amend the Complaint, without any opposition from Defendants' counsel. *See* DE 49. Plaintiff requested permission to withdraw all usury claims asserted against the Defendants and all FDCPA claims except for those asserted against Defendant Schneider. *See* DE 49. That motion was granted by the Court on October 4, 2011. *See* DE 50. In doing so, the Court stated that "the changes Plaintiff proposes are either the withdrawal of claims or minor changes to the facts asserted based on new information Plaintiff learned during the course of conducting depositions." *Id.* at 2. Plaintiff filed her Amended Complaint on October 6, 2011. *See* DE 53.[2] Defendants filed their Answer with Counterclaims to the Amended Complaint on October 19, 2011. *See* DE 56.

The parties then proceeded to summary judgment motion practice. Both the Plaintiff and Defendants filed partial motions for summary judgment. *See* DE 68; DE 72. Subsequently, the parties consented to this Court's jurisdiction for all purposes, pursuant to 28 U.S.C. § 636(c)(1). *See* DE 78. The Consent was "so ordered" by Judge Feuerstein on January 4, 2012. *See* DE 81.

By Order dated September 28, 2012, the Court granted, in part, and denied, in part, both parties' motions for partial summary judgment. *See* DE 84. Specifically, the Court held as follows:

- Plaintiff's motion for summary judgment is denied on her claim that [Schneider] violated 15 U.S.C. §§ 1692c(b), 1692e, 1692e(1), 1692e(4), 1692e(5), 1692e(7), 1692e(9), 1692e(10), 1692e(11) (with respect to Schneider's business card and documents left at Plaintiff's workplace), and 1692f;

- Plaintiff's motion for summary judgment on her NY GBL § 349 claim is denied. Defendants' motion with respect to that claim is also denied, with the exception of Plaintiff's claim based on the allegedly false assertions set forth in the January 19, 2010 and March 15, 2010 letters. That claim is dismissed;

- Defendants' motion for summary judgment on Plaintiff's intentional infliction of emotional distress claim is granted and the claim is dismissed;

- Defendant's motion for summary judgment on Plaintiff's negligence and negligent hiring/supervision claim is granted, with the exception of the claims based on Schneider's visit to Plaintiff's office that allegedly caused her to fear for her physical safety;

- Defendants' motion regarding NY Medical's vicarious liability for Schneider's acts is denied; and

- Defendant's motion regarding a purported civil conspiracy claim is denied as moot.

*Id.* at 44.

On November 29, 2012, Plaintiff filed a motion for reconsideration of the Court's

---

**2.** In the Amended Complaint, Plaintiff amended the name of Defendant "Sy Schneider" to the full "Seymour Schneider." DE 53. Plain- tiff further amended the name of Defendant "Nathan DOE" to "Nathan Khaimov." *Id.*

September 28, 2012 Order. *See* DE 89. Plaintiff moved to reconsider the Court's rulings, pursuant to Rule 59(e) and Local Civil Rule 6.3, insofar as the Court ordered: (1) denial of summary judgment to Plaintiff regarding violations of the FDCPA §§ 1692(e)(4) AND (5); (2) Plaintiff's negligence and negligent hiring/supervision claims will proceed only to the extent that Plaintiff's fear of injury is based on Schneider's visit to Plaintiff's office; and (3) dismissal of claims related to Intentional Infliction of Emotional Distress. *See* DE 89–1. Defendants opposed the motion. *See* DE 89–2.

While Plaintiff's motion for reconsideration remained pending, Plaintiff and all Defendants—except for Seymour Schneider—filed a settlement agreement on March 25, 2013 in which the action was discontinued in consideration for (1) $37,500 and (2) an agreement by Defendant N.Y. Medical Health Care, P.C. to vacate and dismiss the judgment previously filed in its favor in state court against Plaintiff on November 29, 2011. DE 95 ¶¶ 1–2. On April 17, 2013, the Court "so ordered" the stipulation of discontinuance filed by these parties, dismissing all Defendants except for Seymour Schneider from this case. *See* DE 97.

On September 25, 2013, the Court granted Plaintiff's motion for reconsideration to the following extent: (1) Plaintiff's motion for summary judgment on claims brought under the FDCPA, 15 U.S.C. §§ 1692e(4) and e(5), was granted; (2) Plaintiff's claims for negligent hiring, retention, training and supervision were deemed moot, making reconsideration unnecessary; and (3) Section III(C) of the Court's September 28, 2012 Order discussing and ruling on the claim for Intentional Infliction of Emotional Distress was stricken. DE 98 at 20.

Thereafter, Plaintiff entered into a stipulation with the lone remaining Defendant, Seymour Schneider, to discontinue this action. *See* DE 103. In relevant part, the parties agreed on the following terms:

1. . Defendant agrees to have judgment entered against him for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692 et seq. and New York General Business Law (GBL) § 349, in the amount of $1050 (ONE THOUSAND FIFTY DOLLARS) denominated as statutory damages.

2. Plaintiff waives recovery of any damages in this action that could be characterized as actual damages, with prejudice.

3. Plaintiff reserves the right to seek recovery for all reasonable costs and attorneys' fees in this action, with the Court retaining jurisdiction to determine same.

*Id.* ¶¶ 1–3. The parties further agreed upon a briefing scheduled for Plaintiff's anticipated motion for attorneys' fees and costs. *Id.* ¶ 5. The stipulation was "so ordered" by the Court on October 31, 2013. *See generally id.*

### B. Plaintiff's Motion for Attorneys' Fees and Costs

By Notice of Motion dated December 30, 2013, Plaintiffs' counsel moves the Court pursuant to the FDCPA, 15 U.S.C. § 1692k, and N.Y. General Business Law ("GBL") § 349(h) for $188,126.44 in attorneys' fees and $4,952.69 in costs against the remaining Defendant, Seymour Schneider ("Defendant" or "Schneider"). *See* Pl.'s Corrected Notice of Mot. [DE 115]. Defendant opposes the motion on a number of grounds. *See* Mem. of Law of Def. Seymour Schneider, a/k/a/ Sy Schneider in Opp'n to Pl.'s Appl. for Att'y Fees and Costs [DE 114] ("Def.'s Opp'n"). First, Defendant contends that a reasonable paying client would not pay

$186,992.50 in attorneys' fees in light of Plaintiff's limited degree of success in this matter. *Id.* at 16–20. Second, Defendant argues that the Court should reduce the requested fee amount for counsel's excessive, duplicative, and unnecessary billing, including a percentage reduction for block billing and vague entries. *Id.* at 20–22. Third, Defendant maintains that he should not be held liable for the payment of attorneys' fees stemming from Plaintiff's counsel's own mistakes. *Id.* at 22–23. Fourth, Defendant's counsel points out that a reasonable client generally hires counsel from within his or her own federal district, which Plaintiff did not do. *Id.* at 23. Finally, Defendant argues that the proposed hourly rates submitted by Plaintiffs' counsel are above the prevailing hourly rates awarded for FDCPA cases in the Eastern District of New York. *Id.* at 23–25.

Plaintiff has filed a reply in response to Defendant's opposition arguing that Plaintiff was, contrary to Defendant, successful in litigating her FDCPA and GBL claims against Schneider. *See* Pl.'s Reply Mem. of Law in Further Supp. of App. For Att'y Fees and Costs ("Pl.'s Reply") [DE 116] at 1. Next, Plaintiff claims that the law does not require attorneys' fees and costs to be proportional to the damages recovered by Plaintiff. *Id.* at 2–3. Third, Plaintiff's counsel maintains that the contemporaneous timekeeping records filed with the Court are neither vague nor excessive but, rather, appropriately detail the time expended on "germane tasks" in the litigation. *Id.* at 3–4. Fourth, according to Plaintiff, all fees for travel are compensable and a 50% reduction of those travel costs, as per the practice of courts in this Circuit, has been applied. *Id.* at 7. Fifth, since all claims against Defendant arise from a "common core of facts," all work performed on this case is compensable as against Defendant Schneider. *Id.* at 7–9. Finally, Plaintiff's counsel asserts that the

proposed hourly rates submitted are reasonable. *Id.* at 9–10. However, in the interest of fairness, counsel for Plaintiff notes that he has reduced his fee application by $37,500, which is the amount that was paid to Plaintiff by the other Defendants who previously settled in this case. *Id.* at 8. Accordingly, Plaintiff now seeks $145,486.25 in attorneys' fees and $4,952.69 in costs. *Id.* at 10.

## III. LEGAL STANDARD

The plain language of the FDCPA authorizes an award of reasonable attorney's fees and costs as determined by the Court. *See* 15 U.S.C. § 1692k(a) (party prevailing in FDCPA action entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court"); *accord Jacobson v. Healthcare Fin. Svcs., Inc.,* 516 F.3d 85, 95 (2d Cir.2008) ("The FDCPA provides for fee-shifting as a matter of course to successful plaintiffs...."); *Woods v. Sieger, Ross & Aguire, LLC,* No. 11 Civ. 5698, 2012 WL 1811628, at *5 (S.D.N.Y. May 18, 2012) (awarding reasonable attorney's fees and costs for a successful FDCPA claim).

Both the Second Circuit and the Supreme Court "have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.,* 658 F.3d 154, 166 (2d Cir.2011) (*quoting Arbor Hill v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 183 (2d Cir.2008)). "The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill,* 522 F.3d at 190. "[W]hether the calculation is referred to as the lodestar or the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonable-

ness of the hourly rates and the number of hours expended." *Pinzon v. Paul Lent Mech. Sys.*, No. 11 Civ. 3384, 2012 WL 4174725, at *5 (E.D.N.Y.2012), *adopted by* 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). These factors include:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such an reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184. While the Court may adjust the lodestar calculation, adjustment should only be in "those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662, 1672, 176 L.Ed.2d 494 (2010).

## IV. *ANALYSIS*

### A. Preliminary Issues

### 1. *Defendant Schneider's Liability in Light of Co-Defendants' Settlement*

As a preliminary matter, the parties dispute whether Plaintiff can recover the entirety of the requested fees and costs in this motion against the sole remaining Defendant, Seymour Schneider. Plaintiff relies on case law which suggests that such

fees are warranted so long as the claims "involved a common core of facts or were based on related legal theories, so that much of counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Pl.'s Mem. at 7 (quoting *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir.1998)) (emphasis omitted). Defendant responds by arguing that he should not be held liable for Plaintiff's "failed effort to collect fees against the medical practice, to which failed effort she devoted an inordinate amount of time." Def.'s Opp'n at 16. Defendant argues that "even if [Plaintiff's] claims against all defendants are considered intertwined—and many of them are actually quite distinct— the overall fee must be measured against the result obtained." *Id.* at 16–17.

The issue here is not whether all claims in this case are interrelated, which the Court believes they are, but rather, whether Schneider should be held liable for the vast majority of the attorneys' fees and costs incurred by Plaintiff's counsel in litigating this now more than four-year old action.

Defendant cites *Lucerne Textiles, Inc. v. H.C.T. Textiles, Co. Ltd.*, No. 12 Civ. 5456, 2013 WL 174226, at *1 (S.D.N.Y. Jan. 17, 2013), *adopted by* 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013), in which the Court addressed, *inter alia*, a request for attorneys' fees in a copyright infringement action in the context of a default setting. In reviewing the attorney timekeeping records, the court in *Lucerne* held that there were a "number of entries regarding communications with [third party]'s counsel [which] appear to involve [plaintiff's] potential claim against [the] [third party], since they refer to 'discuss[ing] settlement.'" *Lucerne*, 2013 WL 174226, at *9 (internal citation omitted). After a review of these records, the court found that de-

fendant should not be held "responsible for fees related to [plaintiff's] claims against other parties." *Id.* (internal citations omitted). The court, thus, reduced plaintiff's fees insofar as they were related to claims against other parties. *Id.*

Similarly, in *Colon v. City of New York*, the court conducted a damages inquest in a civil rights action which involved both defaulting and non-defaulting parties. *Colon*, Nos. 09 Civ. 0008, 09 Civ. 0009, 2012 WL 691544, at *1 (E.D.N.Y. Feb. 9, 2012), *adopted by* 2012 WL 686878 (E.D.N.Y. Mar. 2, 2012). There, the court recommended that the fees requested by counsel which dealt with time spent opposing the non-defaulting defendants' motion to dismiss be reduced. *Id.* at *22. The court found that the plaintiffs had "includ[ed] entries in their fee application for tasks that appear to have no relation to their case against these defaulting defendants." *Id.* at *22; *see also Merch. Media, LLC v. H.S.M. Int'l*, No. 05 Civ. 2817, 2006 WL 3479022 at *13 (S.D.N.Y. Nov. 30, 2006) (reducing fees "allocable to legal work relating solely to the two defendants that were dismissed by the Court").

The Defendant also points to *Hirsch v. Sweet N Sour Corp.*, where the court rejected the plaintiff's application to recover all fees and costs incurred in litigating the action from just one defendant. *Hirsch v. Sweet N Sour Corp.*, No. 10 Civ. 5605, 2011 WL 3741008, at *5 (S.D.N.Y. Aug. 25, 2011), *rejected by* 2011 WL 7916967 (S.D.N.Y. Nov. 1, 2011).[3] The defendant was thus "only liable for half of the fees incurred from prosecuting this action against both defendants, in addition to the fees incurred from prosecuting the motion for default and the motion for attorney's fees against [defendant]." *Id.; see also*

*Harvey v. Home Savers Consulting Corp.*, No. 07 Civ. 2645, 2011 WL 4377839, at *7 (E.D.N.Y. Aug. 12, 2011) ("Holding defaulting defendants liable for the entirety of the fees incurred in a litigation, or a disproportionate amount of fees, would permit some defendants to settle their case at a discount while requiring the defaulting defendants to subsidize the difference.").

Plaintiff's counsel has agreed to reduce the amount collected from co-defendants against the award ultimately recovered against Schneider. *See* Pl.'s Reply at 8. Counsel states that "Schneider, does, however, have a point to the extent that Plaintiff has already collected some money from other Defendants and should not be entitled to recover that money twice." *Id.* Thus, in order "[t]o address this concern, Plaintiff hereby reduces its request for fees and costs as against Schneider by $37,500, *i.e.* the full amount paid to Plaintiff by the Defendants in this settlement." *Id.* Based on the cases cited by Defendant and the concession in Plaintiff's reply brief, the Court finds reason to reduce Plaintiff's ultimate fee award by the amount for which Plaintiff already settled with Schneider's co-defendants—$37,500.

**2. Whether the Claims Against Schneider and Co–Defendants Involved a "Common Core of Facts"**

 Schneider argues that the assertions of multiple causes of action, with varying degrees of success, provide support for a reduction of the fee award. The law in the Second Circuit is clear that a plaintiff may recover attorney's fees for "hours spent on [the] unsuccessful claims ... if the claims are inextricably intertwined and involve a common core of facts." *Reiter v. Metro. Transp. Auth. of*

**3.** The Court notes that Judge Rakoff declined to adopt the Report and Recommendation in Hirsch in light of a settlement reached by the

parties rendering the report moot. *See Hirsch,* 2011 WL 7916967, at *1.

*the State of N.Y.,* No. 01 Civ. 2762, 2007 WL 2775144, at \*13 (S.D.N.Y. Sept. 25, 2007) (quoting *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir.1999) (internal quotation marks omitted)). As the Supreme Court stated in *Hensley v. Eckerhart,*

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "[I]f the plaintiff won substantial relief, and all of his claims for relief 'involve[d] a common core of facts' or were 'based on related legal theories,' so that '[m]uch of counsel's time w[as] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis,' there should be a fee award for all time reasonably expended." *Le-Blanc-Sternberg,* 143 F.3d at 762 (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933). Further, the Court points out that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* (quoting same). "Normally this will encompass all hours reasonably expended on the litigation ....In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... *Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient*

*reason for reducing a fee." Id.* (quoting same) (emphasis in original).

The claims asserted against Schneider involved a "common core of facts." Here, the entirety of Plaintiff's claims stem from Defendants' attempts to collect a medical debt alleged by owed by the Plaintiff. Seymour Schneider performed debt collection services for co-defendant N.Y. Medical Health Care P.C. ("NY Medical"). *See* Am. Compl. ¶ 11. According to the Amended Complaint, Schneider handled numerous collection matters for NY Medical and was compensated with a portion of the debts successfully recovered on behalf of the medical practice. *Id.* Schneider was hired to collect the medical debt purportedly owed by Plaintiff and it was largely through Schneider's actions (*e.g.,* leaving a voicemail, appearing at Plaintiff's residence, impersonating a law enforcement official) that NY Medical became liable for damages under the FDCPA and New York law. Further, Plaintiff asserted claims against Schneider under the FDCPA, GBL § 349 for deceptive and unlawful practices, intentional infliction of emotional distress, and slander. The remaining two causes of action for negligence and negligent hiring, retention, training and supervision are also rooted in the debt collection actions of Schneider and other co-defendants as agents of NY Medical. The litigation of Plaintiff's claims in this action against the Defendants, including Schneider, was necessarily interconnected. Plaintiff's counsel is, therefore, entitled to recover fees and costs in litigating all claims asserted in the Amended Complaint, including the causes of action under the FDCPA and GBL § 349.

### 3. Proportionality of Attorneys' Fees and Damages

■ Defendant also maintains that the Plaintiff's requested fees should be re-

duced in light of the disproportionate nature of the attorneys' fees and costs compared to the damages actually recovered by Plaintiff in this matter. However, the applicable case law does not mandate that attorneys' fees be proportionate to the damages ultimately awarded to a client. In *Kassim v. City of Schenectady,* for example, the Second Circuit explained that:

> [r]easoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.

*Kassim v. City of Schenectady,* 415 F.3d 246, 252 (2d Cir.2005) (citing *See Quaratino v. Tiffany & Co.,* 166 F.3d 422 (2d Cir.1999)) (*Quaratino II*) (dismissing a "billing judgment" rule which would limit the awardable fee to one rationally related to the recovery that could be expected *ex ante*); *Cowan v. Prudential Ins. Co. of Am.,* 935 F.2d 522 (2d Cir.1991); *DiFilippo v. Morizio,* 759 F.2d 231 (2d Cir.1985); *see also Lunday v. City of Albany,* 42 F.3d 131, 134–35 (2d Cir.1994) (per curiam); *Dunlap–McCuller v. Riese Org.,* 980 F.2d 153, 160 (2d Cir.1992); *Grant v. Bethlehem Steel Corp.,* 973 F.2d 96, 101–102 (2d Cir. 1992). Further, with respect to fee-shifting statutes such as the FDCPA, arguments concerning the disproportionality of attorneys' fees to damages are routinely rejected. "[T]he FDCPA is a fee shifting statute, and as the Second Circuit has recently emphasized":

> [e]specially for claims where the financial recovery is likely to be small, calculating attorneys fees as a proportion of

damages runs directly contrary to the purpose of fee shifting statutes: assuring that ... claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate fees that are *disproportionate* to the plaintiff's recovery.

*Halecki v. Empire Portfolios, Inc.,* 952 F.Supp.2d 519, 521 (W.D.N.Y. Jul. 9, 2013) (quoting *Millea v. Metro–North R.R. Co.,* 658 F.3d 154, 169 (2d Cir.2011) (emphasis in original)). In *Millea,* the Second Circuit found that the district court's reduction of the $144,792 lodestar figure in a Family Medical Leave Act ("FMLA") case where plaintiff recovered $612.50 was in error. *See Millea,* 658 F.3d at 169. The Court thus rejects the contention that the fee award should be crafted proportionately to the damages recovered by Plaintiff.

Moreover, Plaintiff achieved a high degree of success in this litigation. Plaintiff was awarded the maximum statutory damages allowed under the FDCPA. The holding in *Cooper v. Sunshine Recoveries, Inc.,* a case brought under the FDCPA and the Credit Repair Organization Act ("CROA"), is instructive. *See Cooper v. Sunshine Recoveries, Inc., Inc.,* No. 00 Civ. 8898, 2001 WL 740765, at *2–3 (S.D.N.Y. June 27, 2001). There, the court explained that "[h]aving settled for an award of statutory damages, [plaintiff] is unquestionably a prevailing party in this action." *Id.* at *2. "[W]here a plaintiff prevails, whether or not he is entitled to an award of actual or statutory damages, he should be awarded costs and reasonable attorneys' fees in amounts to be fixed in the discretion of the court." *Id.* (quoting *Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87–88 (2d Cir.1998)). The court in *Cooper* further stated that:

> On one hand, Sunshine points out that [plaintiff] recovered a mere $750 and argues that his success was therefore

minimal. On the other hand, the plaintiff contends that because the maximum statutory award is $1,000 and he obtained seventy-five percent of that amount, he was extraordinarily successful. Neither argument is persuasive. The defendant's position founders on *Quaratino,* 166 F.3d at 425–26, where the Second Circuit made clear that ... the degree of success of a prevailing party does not turn on the size of the award obtained. By the same token, the fact that an award is high in proportion to a statutory ceiling is meaningless where, as here, the ceiling is exceedingly low. Thus, the fee calculation in this case should not be affected by the size of the settlement amount.

*Id.*

 In her settlement with Schneider, Plaintiff received the maximum statutory damages under the FDCPA, $1,000, as well as $50 towards her GBL § 349 claim. "Awarding the statutory maximum under the FDCPA is appropriate in cases where the acts of the debt collector were particularly egregious." *Gonzalez v. Healthcare Recovery Mgmt. Inc.,* No. 13 Civ. 1002, 2013 WL 4851709, at *1 (E.D.N.Y. Sept. 10, 2013) (citing *Overcash v. United Abstract Grp., Inc.,* 549 F.Supp.2d 193, 196 (N.D.N.Y.2008)) (awarding $1,000 in statutory damages against each defendant who repeatedly sought to collect debts already paid in violation of the FDCPA); *Baruch v. Healthcare Receivable Mgmt., Inc.,* No. 05 Civ. 5392, 2007 WL 3232090, at *4 (E.D.N.Y. Oct. 30, 2007) (awarding $1,000 in statutory damages where defendants repeatedly contacted and threatened to sue alleged debtor and harm her credit rating in violation of the FDCPA). By contrast, courts award less than the maximum statutory limit when the FDCPA violation was not occasioned by a "repeated pattern of intentional abuse or where the violation

was technical." *Gonzalez,* 2013 WL 4851709, at *1 (internal quotation omitted). In view of the record in the instant case, the Court finds that Plaintiff has achieved success on her claims under the FDCPA, as well as on her recovery under GBL § 349. *See Rodriguez v. Pressler and Pressler, L.L.P.,* No. 06 Civ. 5103, 2009 WL 689056, at *1 (E.D.N.Y. Mar. 16, 2009) (declining to adopt Magistrate Judge's recommendation reducing fee by 50% since counsel achieved "the maximum possible monetary relief available under the statute"); *see also Dowling v. Kucker Kraus & Bruh, LLP,* No. 99 Civ. 11958, 2005 WL 1337442, at *3 (S.D.N.Y. Jun. 6, 2005) (holding "that the maximum statutory damages available to Plaintiffs under [the FDCPA] is limited to $1,000.00 per plaintiff per proceeding").

Finally, the Court notes that Defendant Schneider has vigorously defended himself in this action, providing further justification for the amount of fees and costs incurred. In fact, this Court previously characterized Defendants' Answer and Counterclaim as reflecting a "complete disregard for the rules of pleading." DE 21 ¶ 3. The Court issued a Report and Recommendation to Judge Feuerstein that Defendants' Answer and Counterclaim be stricken, which Judge Feuerstein adopted. *See* DE 23, 27. Further, Defendant Schneider has defended himself with multiple attorneys during the course of this litigation. Schneider also moved for partial summary judgment and later opposed Plaintiff's motion for reconsideration of the Court's September 25, 2012 summary judgment Order. Towards the latter stages of this case, Schneider declined to enter into a global settlement with the other defendants and instead later executed a separate settlement releasing him from this action. It is well-settled that parties "cannot litigate tenaciously and then be heard to complain about the time

necessarily spent by [its adversary] in response." *Bleecker Charles Co. v. 350 Bleecker Street Apartment Corp.,* 212 F.Supp.2d 226, 229 (S.D.N.Y.2002) (quoting *City of Riverside v. Rivera,* 477 U.S. 561, 580 n. 11, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)). Counsel's efforts in this action were, in large part, driven by the zealous defense put on by Defendant Schneider. In view of the governing case law, the Court will not reduce Plaintiff's attorneys' fees for the efforts necessitated in responding to Schneider's "tenacious" defense.

### B. Attorneys' Fees

Plaintiff seeks to recover attorneys' fees for services rendered in this matter by five attorneys, a law school graduate, and paralegals associated with the Law Firm of Schlanger & Schlanger LLP. *See* Corrected Decl. of Daniel A. Schlanger, Esq. in Supp. of Pl.'s Mot. for Atty's Fees ("D. Schlanger Decl.") [DE 115–2] ¶ 3. Specifically, Plaintiff seeks to recover fees for hours billed by: (1) Michael Schlanger, Esq., (2) Daniel A. Schlanger, Esq., (3) Elizabeth Shollenberger, Esq., (4) Peter T. Lane, Esq., (5) Jeanne M. Christensen, Esq., (6) Gerald Ellis, J.D., a Law Clerk not yet admitted to the bar, and (7) a group of unspecified paralegals. *Id.* ¶ 3. In the original moving papers, Plaintiff sought a total of $183,173.75 in attorneys' fees for over 580 hours of litigation time spanning a period of more than three years. *Id.* ¶¶ 3–4. Plaintiff's counsel states that he used "billing judgment," in order to "remove[ ] any time that was duplicative which ... indicated inefficiency, given the tasks undertaken." *Id.* ¶ 5. As the Supreme Court explained in *Hensley,* "billing judgment is an important component in fee setting.... Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley,* 461 U.S.

at 434, 103 S.Ct. 1933 (internal quotation omitted); *see also Toussie v. Cnty. of Suffolk,* 2012 WL 3860760 (E.D.N.Y. Sept. 6, 2012) ("The party seeking attorney's fees 'bears the burden of establishing entitlement to an award,' and '[t]he applicant should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.' ") (quoting *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933). Over 40 hours of otherwise billable time expended on this case was thus removed by Plaintiff's counsel in the application of billing judgment. *See* D. Schlanger Decl. ¶ 5.

Plaintiff's counsel also "re-classified paralegal-level work performed by attorneys to reflect [the] firm's paralegal rate, rather than that attorney's regular billable rate," again, "as a matter of billing judgment." *Id.* ¶ 6. The Court notes that billing attorney time spent on "administrative tasks" at paralegal hourly rates is permitted. *See Lee v. Santiago,* No. 12 Civ. 2558, 2013 WL 4830951, at *4 (E.D.N.Y. Sept. 10, 2013) ("Where an attorney has billed time for performing "administrative tasks," such as copying or organizing documents or filing documents with the court ... or drafting boilerplate procedural forms such as certificates of service, such time should not be compensated at an attorney-level billing rate.") (citing *Ryan v. Allied Interstate, Inc.,* 882 F.Supp.2d 628, 635–36 (S.D.N.Y.2012); *Rosado v. City of New York,* No. 11 Civ. 4285, 2012 WL 955510, at *5 (S.D.N.Y. Mar. 5, 2012) (compensating, at paralegal rates, "administrative/paralegal" work performed by solo attorney)). This reclassification, therefore, was consistent with the law.

As noted, Schneider opposes the motion on a number of grounds. First, Defendant argues that the hourly rates proposed by

the Plaintiff are unreasonable in the context of current Eastern District cases. Moreover, Defendant maintains that Plaintiff's time records reflect excessive, duplicative, and unnecessary billing. Defendant seeks a percentage reduction for block billing and vague entries.

In reply, Plaintiff disputes Defendant's characterizations of Plaintiff's timekeeping entries, arguing that both the hourly rate and the hours expended prosecuting a vigorously defended action were reasonable. However, as discussed previously, Plaintiff reduced $183,173.75 in fees requested by $37,500—the amount for which Plaintiff previously settled with all other Defendants in this action. *See* Pl.'s Reply at 10. With this information in hand, the Court now turns to an assessment of the specific billing records.

### 1. *Reasonable Hourly Rates*

#### a. Attorneys

To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits. *See Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 172 (2d Cir.2009); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983); *see also Joseph v. HDMJ Restaurant, Inc.*, 970 F.Supp.2d 131, 155–56 (E.D.N.Y.2013) (internal citations omitted); *Pinzon*, 2012 WL 4174725, at *5. In 2011, the Second Circuit affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour. *Konits v. Karahalis*, 409 Fed.Appx. 418, 422–23 (2d Cir.2011) (summary order); *Claudio v. Mattituck–Cutchogue, Union Free Sch. Dist.*, No. 09 Civ. 5251, 2014 WL 1514235, at *14 (E.D.N.Y. Apr. 16, 2014) (collecting cases). Some "[c]ourts have recognized slightly higher ranges in this

district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Small v. New York City Transit Authority*, No. 09 Civ. 2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014) (internal quotations omitted). Counsel's hourly rates are generally "in line with those market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998).

As to paralegals, courts in the Eastern District of New York have held that $90–$100 per hour is a reasonable fee. *See Ferrara v. Prof'l Pavers Corp.*, No. 11 Civ. 1433, 2013 WL 1212816, at *5 (E.D.N.Y. Mar. 23, 2013); *Finkel v. Rico Elec., Inc.*, 11 Civ. 4232, 2012 WL 6569779 (E.D.N.Y. Oct. 1, 2012), *adopted by* 2012 WL 6561270 (E.D.N.Y. Dec. 17, 2012) (recognizing that $90 per hour is a reasonable rate for a paralegal); *see also Finkel v. Frank Torrone & Sons, Inc.*, No. 12 Civ. 924, 2012 WL 1393021, at *1 (E.D.N.Y. Apr. 23, 2012) (same). The Court now addresses whether the hourly rates utilized by Plaintiff's counsel are reasonable under Second Circuit case law.

Plaintiff has provided detailed declarations outlining the professional qualifications of the five attorneys and the law school graduate who performed work in this case. Attorney Michael Schlanger is a Senior Partner at the Law Firm of Schlanger & Schlanger LLP. *See* Decl. of Michael Schlanger, Esq. ("M. Schlanger Decl.") [DE 115–4] ¶ 2. He received his law degree from Northwestern University School of Law in 1962 and was admitted to practice law in New York State in April 1963 and has continuously practiced in the state since that time. *Id.* ¶¶ 4–5. He is also admitted to practice law in the East-

ern District of New York. *Id.* ¶ 1. Michael has been either a partner or of counsel in a general practice firm from 1966 to the present and co-founded the Law Firm of Schlanger & Schlanger LLP with his son Daniel Schlanger in 2007. *Id.* ¶ 7. In over 45 years of practice, Michael has concentrated largely on civil litigation, including matters involving the Employee Retirement Income Security Act ("ERISA"), complex commercial and property damage cases, substantial preferential transfer litigation, breach of fiduciary claims, partnership disputes, and residential and commercial real estate matters. *Id.* ¶ 8. Attorney Michael Schlanger requests that the Court approve an hourly rate for him of $475. *Id.* ¶ 12.

■ Co-founder and Managing Partner of Schlanger & Schlanger LLP, Daniel A. Schlanger, Esq. heads the firm's consumer law practice. *See* Decl. of Daniel A. Schlanger ("D. Schlanger Decl.") [DE 115–2]. Daniel graduated from Harvard Law School in 2004. *Id.* ¶ 10. He then clerked for the Hon. R. Lanier Anderson, III of the United States Court of Appeals for the Eleventh Circuit. *Id.* ¶ 11. In August 2006, Daniel Schlanger was admitted to practice law in the State of New York and he is also admitted to practice law in the Eastern District. *Id.* ¶¶ 1, 12. For approximately one year thereafter, Plaintiff worked as a staff attorney at the Legal Aid Society of Cleveland in the Consumer Protection practice group. *Id.* ¶ 13. Since August 2007, Michael has been a Partner with Schlanger & Schlanger LLP, focusing exclusively on consumer protection issues. *Id.* ¶ 14. In his supporting declaration, Daniel cites to a number of federal consumer protection actions in which he has represented plaintiffs in both individual and class litigation. *Id.* Michael has been involved in "virtually all of the affirmative federal consumer cases" brought by

Schlanger & Schlanger LLP. *Id.* ¶ 16. He represents that he has "resolved innumerable FDCPA claims as well as innumerable state court collection defense cases, prelitigation." *Id.* ¶ 17. Attorney Daniel Schlanger requests the Court's approval of an hourly rate of $375 for him. *Id.* ¶ 33.

■ Elizabeth Shollenberger is an attorney duly admitted to the Eastern District and a Partner at Schlanger & Schlanger LLP. *See* Decl. of Elizabeth Shollenberger ("Shollenberger Decl.") [DE 115–5] ¶¶ 1–2. In 1981, Attorney Shollenberger received her law degree from Yale Law School. *Id.* ¶ 5. In the following year, she was admitted to practice law in New York. *Id.* ¶ 6. Between 1981 and 1986, Attorney Shollenberger worked as a law graduate and then as an associate at various private law firms focusing on complex civil litigation. *Id.* ¶ 8. From 1986 to 1988, Attorney Shollenberger was a fulltime faculty member at the New York University School of Law. *Id.* ¶ 9. Over the following 21 years, until October 2009, Shollenberger worked as a legal services attorney at various non-profit organizations. *Id.* ¶ 10. In 2001, Attorney Shollenberger re-entered academia as an adjunct professor at New York Law School. *Id.* ¶ 11. Between 2010 and March, 2012, Shollenberger worked as a solo practitioner specializing in various litigation matters. *Id.* ¶ 12. She joined the law firm of Schlanger & Schlanger LLP in March, 2012 as counsel. *Id.* ¶ 13. In September 2013, Shollenberger became a Partner at the firm. *Id.* Although Attorney Shollenberger has been in practice for 30 years, her work in FDCPA matters is relatively recent. She has worked on numerous consumer protection cases in federal court. Shollenberger Decl. ¶¶ 14–15. Attorney Shollenberger requests reimbursement at the hourly rate of $425. *Id.* ¶ 30.

■ Attorney Peter T. Lane is a Partner at Schlanger & Schlanger, LLP. *See* Decl. of Peter T. Lane ("Lane Decl.") [DE 115–3] ¶ 2. He graduated from Brooklyn Law School in 2008 and is admitted to practice law in the Eastern District. *Id.* ¶¶ 1, 4. After law school, Lane worked freelance for two firms, practicing in consumer litigation, among other areas. *Id.* ¶ 7. Between April 2009 and August 2010, Attorney Lane was an associate at Bromberg Law Office, PC, "focusing exclusively on federal and state consumer litigation, including many FDCPA cases." *Id.* ¶ 8. Attorney Lane joined Schlanger & Schlanger LLP in September, 2010 and became partner at the firm in September, 2013. *Id.* ¶¶ 8–9. Lane has served as lead counsel on numerous consumer cases filed in federal court. *Id.* ¶ 13. Plaintiff asks that the Court approve an hourly rate of $315 for Attorney Lane. *Id.* ¶ 22.

■ The professional qualifications of Jeanne M. Christensen are set forth in the supporting declaration of Daniel A. Schlanger. *See* D. Schlanger Decl. ¶¶ 36–44. Attorney Christensen graduated from the University of Maryland Law School in 1992 and was admitted to practice law both in New York and the Eastern District in 1994. *Id.* ¶¶ 36–37. She worked for a firm which specialized in federal employment litigation in Baltimore and then for a general litigation firm in New York. *Id.* ¶ 38. Between 2000 and 2003, Attorney Christensen worked part-time as a solo practitioner on various matters including residential refinancing, home equity closings, and personal injury cases. *Id.* Attorney Christensen worked for Schlanger and Schlanger LLP in both the consumer and commercial litigation practices from 2008 to 2011. *Id.* ¶ 39. She currently is the founding-partner of Imbresi Christensen in New York City, where she practices in the areas of employment discrimination,

wage and hour litigation, consumer class actions, and commercial litigation. *Id.* ¶ 43. Plaintiff requests that the Court approve an hourly rate of $240 for Attorney Christensen. *Id.* ¶ 44.

Defendant argues that the proposed hourly billing rates for the attorneys who worked on this matter are excessive. Def.'s Opp'n at 13–14. Defendant relies on *Fawzy v. Gendy,* in which Judge Cogan explained that the appropriate billing rate for partners in the Eastern District is $200–$350. *Fawzy v. Gendy,* No. 12 Civ. 5580, 2013 WL 5537128, at *1 (E.D.N.Y. Oct. 1, 2013). Here, Defendant point outs, Plaintiff seeks to bill Michael Schlanger at $475, Daniel Schlanger at $375, and Elizabeth Shollenberger at $425. *See* Def.'s Opp'n at 13. Moreover, Peter Lane, who became a partner in September 2013, has only been out of law school since 2008 and does not warrant an hourly rate of $315. *Id.* The Court notes that *Fawzy* involved claims under Fair Labor Standards Act ("FLSA"). *Fawzy,* 2013 WL 5537128, at *1–2 ("Although many cases do not distinguish between different areas of legal practice, I believe that in ascertaining a reasonable hourly rate for FLSA cases, it is important to focus on FLSA cases, which most of the cases that plaintiff cites in support of his motion are not.").

The Eastern District has recognized reasonable fees for law firm associates ranging from $100 to $295 per hour, less than the recognized $200 to $400 per hour for more experienced attorneys. *Ferrara,* 2013 WL 1212816, at *5 ("Recently, reasonable hourly rates in this district have ranged from approximately $200 to $400 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals"); *Konits,* 409 Fed.Appx. at 422–23; *Penberg v. HealthBridge Mgmt.,* No. 08 Civ. 1534, 2011 WL 1100103, at *6–7 (E.D.N.Y. Mar. 22, 2011); *Hilton v. UK*

*Fragrances, Inc.*, No. 12 Civ. 6346, 2014 WL 794304, at *9 (E.D.N.Y. Feb. 25, 2014) ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates.") (internal citations and quotations omitted).

In asserting the reasonableness of the proposed rates, Plaintiff has provided the Court with examples of retainer agreements recently executed by other clients of their law firm for similar consumer litigation engagements. Attorney Daniel Schlanger states that "[t]hese retainers include more recent agreements pursuant to which clients pay my current rates, as well as retainers from 2012 and January—August 2013 pursuant to which consumers and other individual clients agreed to pay my previous rate of $350." D. Schlanger Decl. ¶ 34. For example, in a retainer agreement dated November 6, 2013, the client is agreeing to pay the following rates: (1) Michael Schlanger—$475; (2) Daniel Schlanger—$375; (3) Elizabeth Shollenberger—$425; (4) Peter Lane—$315; and (5) Paralegals—$115. *See* D. Schlanger Decl., Ex. D. Defendant does not address this supporting material. The, Court however, will consider it in conjunction with the prevailing rates for FDCPA cases approved by other courts in the Eastern District. See *Ruiz v. Maidenbaum & Associates P.L.L.C.*, No. 12 Civ. 5044, 2013 WL 3957742, at *3 (S.D.N.Y. Aug. 1, 2013) (counsel submitted retainers evidencing $300–350 hourly rates in FDCPA action which supported reasonableness of awarding a $300 hourly fee) (quoting *Arbor Hill*, 522 F.3d at 190) ("The reasonable hourly rate is the rate a paying client would be willing to pay.").

In addition, counsel has submitted a supporting declaration from Douglas Kell-ner, Esq. *Id.* ¶ 35. Attorney Kellner is not affiliated with Schlanger and Schlanger LLP. He is a named partner at Kellner, Herlihy, Getty, & Friedman, LLP, with over 35 years in private practice—a large portion of which has been focused on representing individual consumers. *See* Douglas A. Kellner Decl. ("Kellner Decl.") [DE 115-6] ¶¶ 4–5. More specifically, Attorney Kellner has worked for law firms specializing in "representing residential tenants, both in defending their interests in eviction actions and enforcing their rights through affirmative litigation in state and federal courts." *Id.* ¶ 5. Attorney Kellner submitted a declaration to support the hourly rates proposed by Plaintiff's counsel in the instant motion based upon his understanding of the legal market for services of attorneys who represent individual consumers. *Id.* ¶ 6. He has also based his declaration upon a review of the respective attorneys' professional qualifications. *Id.* ¶¶ 2, 6, 8. Kellner was not compensated in connection with his declaration. *Id.* ¶ 14. Kellner asserts that the hourly rates proposed for the attorneys, law school graduate, and paralegals are well within those found reasonable by courts in the Eastern District. The Court does not find this "expert" declaration persuasive. Although he is an experienced lawyer, Attorney Kellner practices in an entirely different area of law, not on consumer protection and FDCPA cases. Most respectfully, the Court does not find the declaration by Attorney Kellner helpful to determine relevant market rates in this area.

Having reviewed the billing records and the declarations in the context of the relevant case law in this District, the Court finds proposed attorney billing rates to be high. Initially, the Court acknowledges that this matter was fiercely litigated and extended over three years. The Court also recognizes that two of the attorneys

who represented Plaintiff in this case have substantial experience in the area of consumer protection and the FDCPA. The retainer agreements from other actions have also been considered. However, these considerations are balanced by the requirement to adopt an hourly rate which reflects the prevailing market rate in the forum district for FDCPA actions based on the background and experience of all five attorneys. See *Arroyo v. Frontline Asset Strategies, LLC*, No. 13 Civ. 195, 2013 WL 1623606, at *2 (E.D.N.Y. Apr. 15, 2013) (approving an hourly rate of $300 for a partner with more than twenty years of experience and $225 for a senior associate); *Marshall v. Reisman*, No. 11 Civ. 5764, 2013 WL 1563335, at *2–3 (E.D.N.Y. Mar. 25, 2013) (reducing requested $400 hourly rate for a partner with more than twenty years of experience to $300 per hour), *adopted by*, 2013 WL 1561478 (E.D.N.Y. Apr. 12, 2013); *see also Hirsch v. ANI Mgmt. Grp., Inc.*, No. 12 Civ. 3454, 2013 WL 3093977, at *4 (E.D.N.Y. Jun. 18, 2013) (reducing as excessive hourly rates for attorney with thirty years of experience and associate with more than ten years of experience, and awarding $350 and $250 per hour, respectively). Moreover, recently in *Tito v. Rubin & Rothman, LLC*, Judge Azrack approved Attorney Daniel Schlanger's proposed $340–$350 hourly rate, as well as Attorney Shollenberger's $400 hourly rate. *Tito v. Rubin & Rothman, LLC*, No. 12 Civ. 3464, 2014 WL 1092845, at *2–3 (E.D.N.Y. Mar. 18, 2014). However, Attorney's Lane proposed $300 hourly rate was reduced to $200. *Id.* In *Tito*, the parties entered into a class action settlement agreement after nearly one year of litigation. *Id.* at *1.

Having considered all of the factors, the Court reduces the hourly rate of Attorney Michael Schlanger to $400 and Attorney Daniel Schlanger to $325. *See Tito*, 2014 WL 1092845, at *3 (discussing the range of $300–$400 for partners in FDCPA cases). Attorney Shollenberger's rate is reduced to $350 per hour. The Court finds that a $315 hourly rate for Attorney Lane is inconsistent with the case law in the Eastern District and fails to reflect his time in practice, compared to the other partners at Schlanger and Schlanger LLP—notwithstanding the fact that he was recently made a partner. Thus, the Court reduces his fee to $250, which represents the higher end of the range for senior associates in FDCPA actions. *See Tito*, 2014 WL 1092845, at *3 (noting that senior associates in FDCPA cases generally are awarded between $200–$300 per hour). Finally, Attorney Christensen's proposed $240 hourly rate is reduced to $220 based on her overall experience and time spent handling FDCPA matters in this District.

### b. Law Clerk Gerald Ellis

█ The qualifications of Law School Graduate Gerald Ellis are laid out in the supporting declaration of Douglas A. Kellner, Esq. *See* Kellner Decl. ¶ 11. Mr. Ellis graduated from Fordham University School of Law in 2010. *Id.* ¶ 11. At the time he worked on this matter, Mr. Ellis was awaiting admission to practice after having passed the New York bar exam. *Id.* Prior to working at Schlanger and Schlanger LLP, Mr. Ellis completed a Dean's Fellowship at the Fordham University School of Law, Feerick Center for Social Justice where he assisted in the administration of a limited legal advice project for unrepresented debtor-defendants in New York City and New York State courts. *Id.* Prior to that, Mr. Ellis worked as a Law Clerk and Legal Assistant for five years at the law firm of Arnold & Porter, LLP. *Id.* Plaintiff requests that the Court approve a $180 hourly billing rate for Gerald Ellis' work in this case. *Id.*

Defendant contends that the proposed $180 hourly rate for Mr. Ellis is excessive. *See* Def.'s Opp'n at 13. That rate, according to Defendant, is inappropriate for an individual not admitted to the bar. *Id.* Plaintiff does not specifically rebut this assertion, arguing generally in reply that all proposed hourly rates are reasonable. *See* Pl.'s Reply at 9–10. The Court, however, disagrees. Numerous cases in the Eastern District hold that the hourly rates awarded to law clerks (who are not admitted to the bar) should be comparable to those awarded to paralegals. *See Trs. of the 1199 SEIU Health Care Employees Pension Fund v. Traymore Chemists, Inc.,* No. 13 Civ. 4070, 2014 WL 4207589, at *12 (E.D.N.Y. June 25, 2014), *adopted by* 2014 WL 4207592 (E.D.N.Y. Aug. 25, 2014) ("Law clerks are generally awarded rates similar to those of paralegals.") (citing *Dajbabic v. Rick's Cafe,* 995 F.Supp.2d 210, 213 (E.D.N.Y.2014) (reducing the hourly rate for a law clerk working before admission to the bar from $100 to $75); *Guardado v. Precision Financial, Inc.,* No. 04 Civ. 3309, 2008 WL 822105, at *4–5 (E.D.N.Y. Mar. 25, 2008) (lowering the rate for a legal intern "awaiting admission to the bar" from $185 per hour to $75 per hour)). Law Clerk Gerald Ellis' hourly rate here is reduced from $180 to $100. *See Moore v. Houlihan's Restaurant, Inc.,* 07 Civ. 3129, 2011 WL 2470023, at *7–8 (E.D.N.Y. May 10, 2011), *adopted by* 2011 WL 2462194 (E.D.N.Y. June 17, 2011) (reducing student law clerk's hourly rate from $175 to $80).

#### c. Paralegals

■ Plaintiff seeks to recover fees for work performed by paralegals and other non-attorney support staff at Schlanger and Schlanger LLP. *See* D. Schlanger Decl. ¶ 3. Plaintiff has provided the resumes of these para-professionals, which outline their work experience. *See Id.* ¶ 9;

*see also* D. Schlanger Decl., Ex. C. These individuals include: (1) Allyson L. Magliery, who has worked as a paralegal and legal assistant since August 1999; (2) Jacqueline T. Del Chiaro who appears to have at least eight years of legal assistant experience prior to Schlanger and Schlanger LLP; (3) Yokairy Tavarez who has over thirteen years of paralegal experience; (4) Fationa Mamo (unspecified years of experience); (5) Howard Hemsley (at least 18 years of legal assistant experience); (6) Andrea E. Ralph (at least 10 years of legal assistant/secretary experience). *See* D. Schlanger Decl., Ex. C. Plaintiff requests that the paralegals who worked on this matter be billed at $115 per hour. *See* D. Schlanger Decl. ¶ 3.

Defendant also disputes the reasonableness of billing the paralegals in this matter at $115. *See* Def.'s Opp'n. Again citing Judge Cogan's decision in *Fawzy,* Defendant asserts that the appropriate range for legal assistants is between $70 and $80 per hour. *Id.* In the Second Circuit, prevailing paralegal, law clerk and legal assistant rates have more recently been found to be anywhere from $70 to $100 per hour. *See Ferrara,* 2013 WL 1212816, at *5 ("Recently, reasonable hourly rates in this district have ranged from approximately … $70 to $100 for paralegals."); *Rico Elec.,* 2012 WL 6569779 ($90 per hour is a reasonable rate for a paralegal); *Frank Torrone,* 2012 WL 1393021, at *1 (same); *Firststorm Partners 2, LLC v. Vassel,* No. 10 Civ. 2356, 2012 WL 3536979, at *4 (E.D.N.Y. Aug. 15, 2012) ("rates of $70 to $80 for legal assistants are considered acceptable") (citing *Crapanzano v. Nations Recovery Ctr., Inc.,* No. 11 Civ. 1008, 2011 WL 2847448, at *2 (E.D.N.Y. June 29, 2011)). Plaintiff bears the burden of justifying a rate higher than that usually found within the Eastern District. *See, e.g., Eu Yan Sang Intern. v. S & M Enterprises (U.S.A.) Enterprise Corp.,* 2010 WL

3824129, at \*7 (E.D.N.Y. Sept. 8, 2010) ("Without any information as to why a higher rate would be warranted . . . attorneys should [not] be awarded fees greater than those typically approved of within the Eastern District"). Having considered the rationale articulated by the Plaintiff as well as the prevailing rate for paralegal services in the Eastern District, the Court hereby reduces Plaintiff's requested hourly paralegal rate to $95. *See Cook v. First Revenue Assur., LLC*, No. 10 Civ. 5721, 2012 WL 272894, at \*3 (E.D.N.Y. Jan. 9, 2012) (in FDCPA action, noting that acceptable paralegal rates ranged from $70 to $100 per hour).

### 2. Reasonableness of Hours Expended

Defendant contends that half of Plaintiff's time records consist of vague entries, block billing, and duplicative notations. *See* Def.'s Opp'n at 5–12. Defendant maintains that 159.5 of the 578.85 hours expended on this matter consist of vague entries. *Id.* at 5. For example, Defendant argues that Daniel Schlanger submitted 58.4 hours for entries such as "Continue to revise Memorandum of Law and also 56.1 opposition" on December 7, 2011. *Id.* at 5–6. Attorney Lane entered 44 hours of entries such as "Preparing Reply in further support of Plaintiff's Motion for Summary Judgment" on December 20, 2011. *Id.* at 6. Another example provided by Defendant is an entry by Law Clerk Gerald Ellis (whom Defendant asserts entered 35 hours of vague entries) on November 25, 2011 when he wrote "Continue to drat and edit opposition to Motion for Summary Judgment." *Id.*

Having reviewed the purportedly vague entries in Plaintiff's time records, the Court disagrees with Schneider's assertions. "Attorneys . . . are not required to provide the Court with a detailed accounting of each minute spent performing a task in the case." *Access 4 All, Inc. v. 135 West Sunrise Realty Corp.*, No. 06 Civ. 5487, 2008 WL 4453221, at \*10 (E.D.N.Y. Sept. 30, 2008). "Rather, the records produced should be specific enough to assess the amount of work performed." *Id.* (citing *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933). The Court has reviewed the time records pointed out by Defendant's counsel and finds them to be sufficiently detailed. Rather than vague references to incomprehensible tasks, Plaintiff's counsel provide detail such as the nature of the motion that is being drafted, the subject of e-mails being sent, and the nature of the court appearance which is being billed, as just some examples of the records submitted by counsel. *See Microban Products Co. v. API Industries, Inc.*, No. 14 Civ. 41, 2014 U.S. Dist. LEXIS 92704, at \*12 (S.D.N.Y. Jul. 7, 2014) (counsel need only "identify the general subject matter of [their] time expenditures.") (quoting *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933). Thus, the Court declines to reduce the requested hours submitted by Plaintiff's counsel on the basis of their vagueness.

Next, Defendant contends that many of Plaintiff's time entries consist of block-billing. *See* Def.'s Opp'n at 7. Specifically, Defendant argues that Plaintiff has submitted 119.5 hours of entries in this manner. *Id.*[4] For example, Defendant points to an October 3, 2011 entry from Attorney Michael Schlanger which states "Meet with client and then separately with Donna Tucker the receptionist when Schneider came to GD's workplace, including preparing or same and including one-

---

4. Several of the allegedly insufficient time entries referenced in Defendant's opposition were already removed by Plaintiff in the Corrected Notice of Motion. *See* D. Schlanger Decl. ¶ 3 n. 1.

half travel time." *Id.* Another example provided by Defendant is a January 21, 2011 entry by Attorney Christensen which reads: "Draft Answer to counterclaims; discuss with Daniel Schlanger, edit and finalize; emails and 2 telephone conferences with client." *Id.*

██ Block-billing is defined as "the lumping together of discrete tasks with others that are not clearly defined, which 'makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity.' " *Penberg,* 2011 WL 1100103, at \*9 (quoting *Ass'n of Holocaust Victims v. Bank Austria,* No. 04 Civ. 3600, 2005 WL 3099592, at \*5 n. 9 (S.D.N.Y. Nov. 17, 2005)). Plaintiff argues that the entries submitted do not constitute "block-billing." *See* Pl.'s Reply at 4–5. Rather, Plaintiff asserts that the entries describe "various tasks that are germane to the preparation of a single motion." *Id.* at 5. The Court disagrees. Counsel for Schneider has cited several examples of entries which could have been further divided into multiple entries. One of several examples of block-billing can be seen in a May 16, 2011 time entry for which Attorney Daniel Schlanger billed 6.4 hours. *See* D. Schlanger Decl., Ex. A. In that entry, Attorney Schlanger states: "Revising all Deposition Notices, Request for Documents and 1st Interrogatories to all five Defendants, including addenda, and preparing AOS for same." *Id.; see Penberg,* 2011 WL 1100103, at \*9 ("The majority of counsel's time entries contain more than one task and many contain multiple, unrelated tasks ... that do not appear to have been performed in one block of time."). Accordingly, the Court shall reduce by a percentage the ultimate lodestar amount in view of the block-billing reflected in Plaintiff's contemporaneous time records.

The Court has considered the remaining arguments raised by Defendant's counsel and finds them unavailing. Defendant also argues that Plaintiff's time records reflect excessive billing, including the use of multiple attorneys on discrete tasks. Having reviewed the time records and considered the complexity of the litigation as well as the contentiousness of the Defendant which resulted in otherwise unnecessary work by Plaintiff's counsel, the Court disagrees with Defendant as to both assertions. The Court notes that the work rendered by multiple attorneys is recoverable so long as the party seeking fees can show that the attorneys engaged in distinct tasks on the case. *See Kapoor v. Rosenthal,* 269 F.Supp.2d 408, 414 (S.D.N.Y.2003) ("Multiple attorneys are allowed to recover fees on a case if they show that the work reflects the distinct contributions of each lawyer."). The Court does not find that multiple attorneys were employed by Plaintiff in an unreasonable manner. Plaintiff's counsel adopted a division of labor which reflected each attorney's specific contributions to this matter. *See* Decl. of Daniel A. Schlanger, Esq. in Further Supp. of Mot. for Att'y Fees ("Schlanger Reply Decl.") [DE 116–1]. Nor does the Court find, as Defendant argues, that Plaintiff billed Defendant "for its own mistakes." *See* Decl. of Peter T. Lane, Esq. in Further Supp. of Mot. for Att'y Fees ("Lane Reply Decl.") [DE 116–2]. As detailed in Lane's reply declaration, Plaintiff billed for the time it was required to expend shielding the personal information found in Defendant's opposition papers which Defendant had filed without the appropriate redactions. *Id.* ¶¶ 8–12. The Court concludes that these were Defendant's own errors and Plaintiff was entitled to bill for the time spent remediating them.

Finally, the Court finds that Plaintiff appropriately billed for the time spent

traveling in this matter. Pursuant to governing law, Plaintiff's counsel billed for only 50% of the time that was actually spent in travel for this case. *See Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc.,* No. 10 Civ. 6036, 881 F.Supp.2d 482, 490 (S.D.N.Y.2012) ("Although it is within a district court's discretion to compensate travel time at the full hourly rate, courts in the Second Circuit often reduce attorneys' fees for travel time by 50 percent.") (internal citations omitted). Thus, the Court rejects Defendant's argument that counsel's time traveling from outside the Eastern District should not be compensated.

### 3. Lodestar Calculation

Based on the foregoing analysis, the Court awards the following attorney/para-professional fees:

| Attorney or employee | Hours requested | Hours awarded | Rate requested | Rate awarded | Total fee awarded |
|---|---|---|---|---|---|
| Michael Schlanger, Esq. | 39.20 | 39.20 | $475 | $400 | $15,680 |
| Daniel A. Schlanger, Esq. | 259.95 | 259.45 [5] | $375 | $325 | $84,321.25 |
| Elizabeth Shollenberger, Esq. | 4.40 | 4.40 | $425 | $350 | $1,540 |
| Peter T. Lane, Esq. | 138.40 | 138.40 | $315 | $250 | $34,600 |
| Jeanne M. Christensen, Esq. | 13 | 13 | $240 | $220 | $2,860 |
| Gerald Ellis, J.D. | 65.20 | 65.20 | $180 | $100 | $6,520 |
| Paralegals | 58.70 | 58.70 | $115 | $95 | $5,576.50 |
| | | | **ATTORNEYS' FEES AWARD:** | | **$151,097.75** |

As stated above, Plaintiff agreed to reduce this lodestar amount by the $37,500 in damages previously recovered from her settlement with Defendants. This reduces the lodestar figure to $113,597.75.

 To account for the block-billed entries, the Court further reduces the lodestar amount by ten percent. "In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming the fat from a fee application.'" *Heng Chan v. Sung Yue Tung Corp.,* No. 03 Civ. 6048, 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (quoting *In re Agent Orange,* 818 F.2d 226, 237 (2d Cir.1987)); *Penberg,* 2011 WL 1100103, at *9 ("Where billing entries contain merely vague descriptions of services rendered, or where counsel has engaged in block-billing, courts have used percentage reductions "as a practical means of trimming fat from a fee application."") (quoting *New York Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983)); *Simmonds v. N.Y.C. Dep't of Corr.,* No. 06 Civ. 5298, 2008 WL 4303474, at *7–8 (S.D.N.Y. Sept. 16, 2008) (ordering 40% reduction where attorneys spent excessive number of hours drafting complaint, drafting and reviewing correspondence, preparing document requests, and preparing research memorandum). After reducing the $113,597.75 lodestar figure by ten percent, the Court arrives at an attorneys' fee award of $102,237.97. Thus, the Court awards Plaintiff's counsel $102,237.97 in attorneys/para-professional fees.

### C. Costs

 Plaintiff requests $4,952.69 in litigation costs incurred in relation to this

5. In his reply declaration, Attorney Daniel Schlanger has withdrawn 0.5 hours relating to having this case published. *See* Schlanger Reply Decl. ¶ 31.

matter. *See* D. Schlanger Decl. ¶ 7. As noted, under the FDCPA, prevailing parties are entitled to the costs incurred in an action. *See* 15 U.S.C. § 1692k(a)(3); *see also Jacobson*, 516 F.3d at 95 The Court notes here that Plaintiff has failed to submit any invoices, receipts, or documentary proof for any the proposed costs. *See* D. Schlanger Decl., Ex. B. The Court takes judicial notice of the $350 filing fee reflected on the docket. *See* Aug. 31, 2010 Electronic Order. However, none of the other itemized expenses (*e.g.*, online research, postage, court reporters) are substantiated by any underlying documentation. Thus, with this record, the Court has no way of confirming that these costs—which are substantial—were incurred by counsel. *See Joe Hand Promotions, Inc. v. Elmore*, No. 11 Civ. 3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013) (taking judicial notice of the filing fee but declining to award counsel service costs due to absence of documentation) (internal citations omitted). Finally, the Court notes that although the Defendant asserted in its opposition memorandum that Plaintiff failed to adequately document its costs, Plaintiff's counsel did not attempt to rebut that assertion in reply by providing documentary proof for its expenses. *See* Def.'s Opp'n at 15–16. Accordingly, the Court grants the request to reimburse Plaintiff with the $350 filing fee. The Court is giving Plaintiff's counsel an opportunity to provide the underlying documentation, but counsel must do so within 14 days or these expenses will be precluded.

## V. *UNOPPOSED 2011 MOTION FOR FEES AND COSTS*

Having reviewed Plaintiff's unopposed 2011 motion for fees and costs stemming from the defense of the amended counterclaim, the motion is GRANTED. *See* DE 105. As noted, the Court previously granted Plaintiff leave to recover the fees and costs associated with responding to a second amended counterclaim in this action. *See* DE 23, 27. Plaintiff incurred fees and costs by preparing a motion to dismiss the Second Amended Answer and Counterclaim, pursuant to Rules 12(b)(1) and (b)(6). *See* DE 105–1 ¶ 9. Attorney Daniel Schlanger expended 23.5 billable hours at a $300 hourly rate for a total of $7,050 in fees. DE 105–2. Paralegal Yokairy Tavarez worked 4.4 hours in responding to the amended counterclaim at an hourly rate of $80 for a total of $352 in fees. *Id.* In view of the case law cited above, the Court finds the rates and the hours expended to be reasonable. In addition, the Court notes that Plaintiff incurred $19.15 in costs for FedEx postage, which was documented with a receipt. The fees and costs detailed in the 2011 motion were not included in the Plaintiff's 2013 motion for attorneys' fees. *See* DE 105. Thus, the Court hereby GRANTS the unopposed 2011 motion for fees and costs in its entirety as against Defendant Schneider.

## VI. *CONCLUSION*

For all of the foregoing reasons, Plaintiff's motion for attorneys' fees and costs is GRANTED, in part, and, DENIED, in part, to the extent set forth in this Order. The Court awards $102,237.97 in attorneys' fees and $350 in costs at this time. The Court will defer entering a final award for 14 days to provide Plaintiff's counsel the opportunity to submit the missing documentation.

The unopposed 2011 motion arising out of the sanctions awarded to Plaintiff on May 27, 2011 is GRANTED. Plaintiff is awarded $7,402 in attorneys' fees and

$19.15 in costs as against Defendant Schneider.

**SO ORDERED.**